## Antone *v.* New Amsterdam Casualty Company, Appellant.

Argued March 28, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Zeno F. Henninger,* of *Henninger & Ehrman,* for appellant.

*J. Campbell Brandon,* with him *W. D. Brandon, W. C. McElvain* and *H. S. Millar,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 25, 1939:

This appeal arises from a judgment based upon a cause of action founded on a policy of indemnity against liability for personal injuries as a result of the operation of an automobile. The judgment was rendered on a verdict by a jury for $2,750 against the insurer-garnishee, who had pleaded "nulla bona." The insurance company then moved for judgment non obstante veredicto and for a new trial and assigned as error the refusal of the court below to grant either motion. The appellant's statement of questions involved only covers the assignment of error relating to the refusal of the court to grant the judgment n. o. v.

The facts are as follows: C. A. Billingsley contracted with the Eagle Publishing Company for the delivery of its newspapers. Billingsley in turn entered into subcontracts with Wayne Watterson, C. H. Watterson and John Heyers, severally, for the performance of his con-

tract. Each of the latter three had automobiles to perform the work. Wayne Watterson owned an Austin touring car; C. H. Watterson had a Dodge truck, and John Heyers, had an automobile whose make the record does not disclose. When Billingsley entered into these sub-contracts the Eagle Printing Company decided that Liability Insurance Policies should be taken out to protect their interests, and the policies deposited with it. Billingsley arranged through the agents for the New Amsterdam Casualty Company, the appellant, for such policies for one year from February 5, 1931. The premiums were paid. The policy in question named as the "assured, Wayne Watterson, C. A. Billingsley and the Eagle Printing Co.," and covered the Austin touring car, the title to which was in Wayne Watterson. A second policy named as the assured, C. H. Watterson, Billingsley and the Eagle Printing Company and covered the Dodge truck, the title to which was in the name of C. H. Watterson. On April 3d of the same year, Wayne Watterson died intestate, leaving to survive him as his only heir at law, his father, C. H. Watterson, and his only possession the Austin touring car. No letters of administration were ever taken out in his estate, and no information of his death was ever sent to the insurance company. C. H. Watterson, however, continued to operate both cars in carrying out the contracts and the Austin touring car was "driven by Armand Martz, an agent and employee of" C. H. Watterson. On December 19, 1931, C. H. Watterson executed an assignment of the certificate of title for the Austin car as an heir of Wayne Watterson and at the same time made application for a certificate of title in his own name and for registration plates for 1932. On January 6, 1932, Martz, while operating the Austin car, injured Eli Antone, the appellee. On January 11, 1932, the Department of Motor Vehicles of this Commonwealth transferred the title of the Austin car to C. H. Watterson and issued to him the registration plates for

1932. On October 23, 1933, Eli Antone instituted the trespass action in Butler County against C. H. Watterson for his injuries sustained in the accident of January 6, 1932. On December 4, 1933, the appellant-insurer caused its attorney to enter his appearance for C. H. Watterson and to file an affidavit of defense to the plaintiff's statement of claim. In this affidavit of defense C. H. Watterson averred that "at the time of the accident . . . C. H. Watterson was the owner" of the Austin touring car. May 1, 1934, the insurance carrier disclaimed liability and notified its counsel to withdraw his appearance from the defense of the case and to return all papers to C. H. Watterson and to instruct him to retain his own counsel. C. H. Watterson acknowledged by writing the receipt of the notice and papers and that he had "ample and sufficient notice that said company and its attorney are withdrawn from the defense of the said case." He then retained the same counsel to represent him with the express written understanding that "his appearance or continued appearance in this case shall in no way involve the New Amsterdam Casualty Company." On January 10, 1935, upon the trial of the trespass action the verdict was rendered against C. H. Watterson and reduced to judgment, upon which the attachment execution was issued against the appellant insurance company, and which is the subject of this appeal.

The question is whether the courts will apply the principle of estoppel to an insurance company which never had an indemnity contract with a defendant in a trespass action, and upon which therefore no liability ever rested, so that it cannot challenge the total failure of any contractual relationship between it and another party, basing the application of estoppel upon the facts that the company took over the investigation of the case in connection with the personal injury sustained and conducted the preliminary proceedings prior to the trial of the cause?

At the time of the accident, January 6, 1932, C. H. Watterson had acquired no rights under the policy covering this Austin touring car. He was then a total stranger to the insurance policy herein invoked. There was not the slightest liability ligament existing between the insurer of Wayne Watterson and the defendant in the action of tort. The cases in Pennsylvania and elsewhere that recognize the estoppel theory in insurance contract cases, are all cases where some contractual relationship existed between the parties. Before a court can say that a company is estopped to deny that "it waived the condition of the policy," there must be a covering policy. But where there is no policy, there is no condition to be waived. By undertaking the defense an insurer elects to treat the insured's cause of action, if he had any, *as covered by its contract.*

Here the doctrine of estoppel is being used, not to make a contract operative, but to create a contract where none existed. In *McCoy v. Northwestern Mutual Relief Assn.,* 92 Wis. 577, 66 N. W. 697, 699, the Supreme Court of Wisconsin said: "What is insisted upon is not really the waiver of a forfeiture, or an equitable estoppel against insisting upon a condition of the policy, the violation of which would otherwise work a forfeiture. . . . What is here sought is not to prevent a forfeiture but to make a new contract. . . . We do not understand that the doctrine of estoppel or waiver goes that far. After a loss accrues, an insurance company may, by its conduct, waive a fortfeiture; or by some act before such loss it may induce the insured to do or not to do some act contrary to the stipulations of the policy, and thereby be estopped from setting up such violation as a forefeiture; but such conduct, though in conflict with the terms of the contract of insurance and with the knowledge of the insured, and relied upon by him, will not have the effect to broaden out such contract so as to cover additional objects of insurance or causes of loss. To illustrate the principle here laid

down, a policy of insurance against loss by fire cannot have ingrafted upon or added to it, by way of estoppel or waiver, provisions for insurance against loss by any other cause; . . . while a forfeiture of benefits contracted for may be waived, the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all. . . ."

In a more recent case of the *Maryland Casualty Company v. Industrial Commission*, 284 N. W. 36 (1939), the Supreme Court of Wisconsin said: "Appellant also claims in effect that the Employers Mutual Company is estopped from asserting that the Maryland Casualty Company should be substituted for it as the one to pay the compensation adjudged because it did not assert such claim and bring in that company as a party when it first learned that the injury occurred in March or April, 1932, when it was not and the Maryland Casualty Company was the insurer. So to hold would create a contract of insurance between the county and the Employers Mutual Company when in fact no contract existed between them for over a year thereafter. This cannot be done. Insurance contracts cannot be created by estoppel." (Citing cases.)

In the case of *Reid v. Missouri State Life Ins. Co.* (Mo. App.), 24 S. W. (2d) 1086, 1087, that court said: "Since the contract pleaded in plaintiff's petition limited the term of insurance to expire September 1, 1928, and the death of the insured occurred some two weeks thereafter, and no facts or circumstances being pleaded in the petition from which a new contract to pay in the event of the insured's death after that date can be inferred, no question of waiver or estoppel arises in the case. The insurer can in no aspect be viewed as having waived any defense to a contract, *because there was no contract of insurance* . . . at the date of the death of the insured." (Italics supplied.)

The fact is conclusive against the appellee that C. H. Watterson, through whom appellee claims, was not

insured by appellant against liability for the accident which gave rise to the cause of action pleaded. Watterson's own policy became effective only when injuries were sustained from the operation of the Dodge truck. The Austin car whose operation caused the injuries complained of was owned at the time the policy was executed by Watterson's son, who was dead at the time of the accident. Watterson's employee, Martz, was driving the Austin car with Watterson's consent, but Watterson was then not a party who was insured against liability for accidents caused by the Austin car. It is true that for a time both Watterson and the insurer thought that the offending car so operated was at the time of the accident under the coverage of the policy referred to. Both were mistaken. The mistake so acted upon temporarily did not prejudice Watterson in the slightest degree, for he stood in no such relation to the insurance company as to subject any rights of his to the latter's prejudicial action. Williston says (sec. 691 of Vol. 3 of the Revised Edition of Contracts) : "It is the natural effect upon the other party which gives vitality to an estoppel." Here there was no injurious "natural effect upon the other party." A cause of action can be founded upon an estoppel only when there has been a misrepresentation that is damaging. Williston on Contracts (supra), sec. 1515 says: "An injurious result must be produced in order to give cause for complaint."

The doctrine of estoppel is based upon the principle that "a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has in good faith relied thereon": 10 R. C. L. page 689. *Com. v. Moltz,* 10 Pa. 527, 51 Am. Dec. 499. In the instant case no "inequitable consequences" could possibly have resulted to Watterson by relying on the "representation" that the Austin car as operated on January 6,

1932, was under the coverage of the insurance policy invoked. Since Antone had no contractual relations whatever with the insurance company, he cannot invoke any estoppel against it. An estoppel "can operate neither in favor of nor against strangers": 10 R. C. L., page 840.

Appellee invokes the "omnibus coverage clause" of the insurance policy in support of his position, but this clause became operative only when the "use or operation of the car was with the permission of the named assured or with the permission of an adult member of the named assured's household." Since Wayne Watterson, the named assured owner of the car, was dead at the time of the accident, the operation could not have been with his permission and he had then no household. For the same reason, Armand Martz, the driver of the car, was not covered by the omnibus clause. Not only is there no privity between Antone and the insurance company qualifying him to invoke against the latter the principle of estoppel but it is not averred anywhere in this record that, because of the company's temporary assumption of liability, Antone refrained from suing the driver personally for the tort or that had he done so and recovered a verdict, it would have been collectible. He who is in a position to invoke an estoppel and does so must show that he suffered a detriment by his reliance on the estopping fact. Appellee also says: "Antone, the plaintiff, could have sued Billingsley, under whose contract the newspaper route was being operated by Watterson, and who was one of those assured under the contract of the defendant company." While pointing out that this *assumes* that Antone was in such privity with the company as to qualify him to invoke an estoppel against it, a further answer to it is that on no theory could Billingsley be held responsible for the accident in question. He had entered into subcontracts with Wayne Watterson, C. H. Watterson and John Heyers, severally, for the performance of his contract

with the Eagle Publishing Company for the delivery of its newspapers. He could not therefore be held responsible for the torts of these subcontractors or their agents and servants. Furthermore, Statement 13 of the "Automobile Application" declares: "The automobiles or trailers covered hereby are owned exclusively by the named assured, except as follows. No exceptions." Since the only automobile named in *this* application was the Austin and since Wayne Watterson was the *sole* owner of *that* car, it follows that only he was covered by the policy of insurance issued on *that* car—and he was dead at the time of the accident.

The court in its charge to the jury said: "The Insurance Company, defendant, came into Court by its answer and said that it was not liable to Mr. C. H. Watterson, nor had any monies in its possession nor any amount owing to Mr. C. H. Watterson. Interrogatories were taken and that issue is before the Court and the jury to determine whether or not the Insurance Company by reason of the policy of insurance that it issued covering this automobile was liable to C. H. Watterson, and it is on that question that all of the evidence that you have heard here and the offers of evidence were presented to the Court. . . . If you are convinced that this insurance company knew this sooner than it disclosed it, or by the exercising of ordinary care it ought to have discovered the fact that Mr. [C. H.] Watterson was not insured from liability on this car, and did not speak as soon as it found out that that was the state of affairs, or ought to have found out the state of affairs, and that worked to the prejudice of the man assured, Mr. Watterson, and if that worked to his prejudice, and we say to you he now has a judgment against him for $2,750.00. If you are convinced of these facts, then you return a verdict in favor of this plaintiff [Eli Antone] for $2,750.00 with interest. If you are not so convinced, you will return a verdict for the defendant."

The record contains no proof that either Watterson or Antone suffered a loss of $2,750 by reason of Watterson's or Antone's reliance on the company's temporary assumption of the liability of an insurer and likewise contains nothing which supports any claim by either of them against the defendant based upon the well established principles of estoppel.

In this proceeding Antone's rights against the insurer can rise no higher than C. H. Watterson's. In the case of *Cameron v. Berger et al.*, 132 Pa. Superior Ct. 484, 490, 1 A. (2d) 529, Judge PARKER well said: "The rights of the attaching creditors cannot rise higher than those which the defendant had against the garnishee, and the liability of the latter is measured by its responsibility in case the debtor himself had brought an action to recover on the policy: *Austin-Nichols & Co. v. Union Trust Co.*, 289 Pa. 341, 137 A. 461; *Knight v. Red Ball Transit Co.*, 306 Pa. 371, 159 A. 715; *Duffy v. B. & L. Assn.*, 122 Pa. Superior Ct. 113, 118, 184 A. 549." C. H. Watterson had no contractual relationship with the defendant company at the time Antone was injured, and nothing in the defendant's subsequent conduct created in Watterson any right against the insurance company. The case cited by the court below in its opinion, to wit: *Earley v. Mut. Fire Ins. Co.*, 178 Pa. 631, 36 A. 195, is wholly inapplicable here, for in that case a contract of insurance existed between plaintiff and defendant and it was held that the company after offering to pay the amount of the loss as fixed by a committee, etc., and conducting negotiations for several months without raising any question as to its liability to pay the loss, could not, in a suit brought upon the policy, be heard to allege that the policy was forfeited because the assured violated its conditions. It was held further that the question of waiver was one for the jury. This court there quoted with approval the following from the language of Chief Justice CHURCH of the New York Court of Appeals in the case

of *Brink v. Ins. Co.,* 80 N. Y. 108: "Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire frankness and fairness. They may refuse to pay without specifying any ground, and insist upon any available ground, but when they plant themselves upon a specific defense, and so notify the assured, they should not be permitted to retract after the latter has acted upon their position as announced, and incurred expense in consequence of it."

In both of the cases above referred to (from Pennsylvania and New York, respectively), it is to be noted that the principle of estoppel against an insurance company was invoked by one of the company's "customers." A stranger to a company is in no position to invoke an estoppel against it. As Justice STRONG said in his concurring opinion in *Sunderlin et al. v. Struthers,* 47 Pa. 411, 423: "It is an unprecedented extension of the doctrine of equitable estoppel, to hold that a man is bound to the world to make good what he has said to any one, if others choose to rely upon it." In that case it was held that a stranger to a mortgage, "neither a party nor a privy," could not use it as the basis of an equitable estoppel. In discussing the subject of estoppel by conduct Bigelow on Estoppel (6th ed.) says (page 617): "Only *parties* and their *privies* are bound by the representation, and only those whom the representation is made to or intended to influence and their privies may take advantage of the estoppel. If the act was inter alios, there can be no estoppel." See *Shepherd v. May,* 115 U. S. 505.

The judgment of the court below is reversed and is here entered for defendant n. o. v.