# Lebanon Mutual Insurance Company *versus* Losch.

1. An application for a policy of insurance provided that the representations therein were " a warranty," and contained a full and true exposition of all the facts in regard to " condition, situation and value of the property." The policy provided that it was accepted in reference to the conditions annexed, " as well as the application and survey, which are to be resorted to in order to explain the rights of the parties in cases not otherwise provided for." An interrogatory in the application was: " If encumbered, how, and to what amount?" To which A, the applicant, answered, " No." There was, in fact, a mortgage covering part of the premises at the time, for which a new mortgage was afterwards substituted. The company assented to the latter mortgage, and were paid for approving it, before the fire. In a suit by A to recover for loss of the building by fire :

*Held*, that the policy did not in terms make the application a part of

it, and thereby incorporate a warranty against incumbrance into the contract. The statement in the application was therefore a representation, not a warranty, and did not, of itself, defeat A's right to recover. Besides, the company was estopped from setting up this defence by its subsequent assent to and acceptance of pay for the allowance of the new mortgage in place of the old.

2. The court charged: "Where the defendant undertakes to say that the answer to a certain question in the application amounts to a warranty, and that warranty does not appear in the body of the policy itself, you are to treat the answers in the application simply as representations, and there can only be a defeat in case the jury find that those representations were falsely made."

*Held*, that this was true as an abstract proposition, and no ground for reversal. If the company wished a more specific instruction, it should have submitted a point asking for it.

3. The policy also provided: That if during the insurance "any buildings be erected or change be made in the use or occupation of the same or neighboring premises, or otherwise, whereby the risk or hazard is increased, so as to increase the rate of insurance;" the company must be notified and their assent obtained, otherwise no recovery could be had under the policy. A. rented the lot adjoining, and his tenant put up there a frame carriage factory, about fifty feet from the insured buildings, of which the company was not notified. There was evidence that the fire originated in this carriage factory:

*Held*, that to prevent a recovery under said clause, the company must show, not only that A. knew the factory would increase the risk, but that it would increase the rate of insurance.

4. Evidence offered to show an increased risk, held to have been properly rejected.

5. Where a point submitted assumes facts as to which there is no evidence there is not error in refusing it.

February 19th, 1885. Before Mercur, C. J., Gordon, Paxson, Trunkey and Clark, JJ. Sterrett and Green, JJ., absent.

Error to the Court of Common Pleas of *Lehigh county:* Of July Term 1884, No. 171.

This was an action of debt, by Charles Losch against the Lebanon Mutual Insurance Company on two policies of fire insurance. Plea, *nil debet.*

On the trial, before Meyers, P. J., of the third judicial district, the following facts appeared:

In 1870 and 1871 the defendants issued to the plaintiff two policies of insurance; one covering certain buildings used for a livery stable in the city of Allentown, and the other personal property which might be therein from time to time. The application for the policies contained the following clause: "And the assured hereby covenants and engages that the representations given in the application for this insurance is a warranty on the part of the assured, and contains a just, full

and true exposition of all the facts and circumstances in regard to condition, situation and value of property insured." The eleventh interrogatory in the application was: "If encumbered, how and to what amount?" to which the plaintiff answered, "No." The policies contained the following clause: "Provided always . . . . . And that this policy is made and accepted in reference to the conditions hereunto annexed, as well as the application and survey, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for." And also the following condition, No. 9 : "If, during the insurance, any alterations be made on the premises, buildings be erected, or change made in the use or occupation of the same or neighboring premises or otherwise, whereby the risk or hazard is increased, so as to increase the rate of insurance, it shall be the duty of the insured to give notice thereof to the secretary, pay the additional premium and obtain the consent of the company thereto in writing, otherwise the insured shall not be entitled to recover for any loss or damage by fire originating in consequence of such change." At the time the policy was accepted there was a mortgage of two thousand dollars upon part of the buildings. This mortgage was afterwards removed, and a new one covering the entire premises substituted. The latter mortgage the defendants consented to, and were paid for approving, several years before the fire.

Subsequently the plaintiff rented the lot adjoining the livery stable and his tenant put up a frame building, used as a carriage factory, within fifty feet of the insured buildings. No notice of the erection of the carriage factory was given to the defendants, nor was any additional premium paid. The insured buildings were destroyed by a fire which, it was claimed, originated in the carriage factory. The defendants offered several witnesses, one a bartender from the neighborhood; another an insurance agent, and another the local agent of the defendants, by whom they proposed to show that the risk to the insured buildings was increased by the erection of the carriage factory; and whose opinions they proposed to ask upon the increase of risk. Objected to on the ground that the witnesses had not been shown to have such knowledge as to warrant the admission of their evidence. Objections sustained. (Eighth to thirteenth assignments of error, inclusive.)

Defendants submitted the following points:—

*First.* "It being an admitted fact that during the term of the insurance of the premises alterations were made thereon, and buildings were erected, whereby the risk or hazard, as well as the rate of insurance, was increased, and it being the

undisputed testimony in the cause, that no notice of said alterations and erecting of buildings was given to the company, the plaintiff is not entitled to recover." Refused. (First assignment of error.)

*Second.* "It being an admitted fact that during the term of the insurance, buildings were erected, and the undisputed testimony in the cause being that thereby the risk or hazard was increased, as well as no notice of such erection was given, the plaintiff is not entitled to recover." Refused. (Second assignment of error.)

*Third.* "It being an admitted fact, that during the term of insurance alterations were made on the premises, and buildings were erected, whereby the risk was increased, as well as the rate of insurance was increased, and the undisputed evidence being that no notice of such alteration or change was given, and the proof in the cause being that the fire originated in the building erected during the term of the insurance, the risk of the defendant thereby increased and their contract wholly violated as is contained in the conditions annexed to the policy, and therefore the plaintiff cannot recover." Refused. (Third assignment of error.)

*Fourth.* "It being an undisputed fact that the fire originated in the building erected during the time of the insurance, whereby the buildings insured were destroyed, the plaintiff cannot recover." Refused. (Fourth assignment of error.)

*Fifth.* "Under the form of action and the pleadings in the case, the plaintiff cannot recover." Refused. (Fifth assignment of error.)

*Sixth.* "It being the undisputed testimony that the fire originated in the carriage and paint shop, the building erected or permitted to be erected by the plaintiff, without notifying the defendant, and first obtaining its consent and paying the increased rate of insurance, and that the fire from said carriage and paint shop communicated to the building insured," the plaintiff is not entitled to recover. Refused. (Sixth assignment of error.)

The Court charged the jury, *inter alia*, as follows:—

"I have already said to you where the defendant undertakes to say that the answer to a certain question in this paper [the application] amounts to a warranty and that warranty does not appear in the body of the policy itself, you are to treat the answers in the application simply as representations, and there can only be a defeat in case the jury find that those representations were falsely made." (Seventh assignment of error.)

Verdict for plaintiff and judgment thereon ; whereupon the defendants took this writ assigning for error the answers to

their points; the rejection of evidence, as above noted, and that part of the general charge quoted.

*Schwartz* (with whom was *Butz*), for plaintiffs in error.— It is not denied that Losch answered the eleventh interrogatory in the application incorrectly. If, by the contract, his statements were warranties, then this answer is fatal to a recovery on the policies, whether made by mistake or fraudulently : Cooper *v.* Farmers' Mutual Fire Ins. Co., 14 Wr., 299 ; Eilenberger *v.* Protective &c. Ins. Co., 8 Norris, 464 ; McClure *v.* Watertown &c. Ins. Co., 9 Norris, 277 ; Birmingham &c. Ins. Co. *v.* Kroegher, 2 Norris, 64 ; Lancaster &c. Ins. Co. *v.* Lenheim, 8 Norris, 497. The court below based its ruling on the fact that there were no words of warranty in the policy itself, and because it was not therein stipulated that the statements of the applicant in his application should be warranties on his part. This we believe to have been error under the cases : Commonwealth Mutual Fire Ins. Co. *v.* Huntzinger, 2 Out. 41. The evidence as to increased risk by building the carriage factory, should all have been admitted. The witnesses rejected were not offered as experts ; they were all familiar with the neighborhood and were able to give an opinion whether the risk was increased. The evidence was admissible, and it was the province of the jury to determine its weight.

*Edward Harvey*, for defendant in error.—A statement in an application for insurance is to be considered a representation rather than a warranty, unless it is clearly made a warranty by the terms of the policy, or by some direct reference therein : Daniels *v.* Hudson River Fire Ins. Co., 12 Cush., 416 ; Owens *v.* Holland Ins. Co., 56 N. Y. 565 ; Wood on Fire Ins., page 292, § 149 ; Columbia Ins. Co. *v.* Cooper, 14 Wr. 331 ; Cumberland Valley Co. *v.* Mitchell, 12 Wr. 374 ; Frisbie *v.* Fayette Ins. Co. 3 Casey, 325. The application sets out that the assured covenants that the representation therein " is a warranty," and " contains a just, full and true exposition of all the facts and circumstances in regard to condition, situation and value of the property insured." The words " condition, situation and value " do not include incumbrances. Condition as therein used refers to materials, character of roof, whether buildings are old or new, and their condition of repair. Situation requires a statement of adjoining properties. The value of the property is by the terms of the application " estimated by me at not more than its actual cash value." It is not provided that *all* the answers are warranties ; only those that relate to condition, situation and value. Stipulations in the application that certain things are warranties do not necessarily make

them such : Wood on Fire Ins., § 138, p. 275.   The policy does not make the application a part of the contract of insurance. Under it, the collateral papers are to be resorted to only to *explain* what is otherwise not specially provided for.   By the terms of the contract, therefore, the application and answers therein are regarded as mere representations, not avoiding the contract, if untrue, but avoiding it if false and fraudulent.

Under condition 9 of the policy, the mere additional risk of fire to the insured property by reason of the erection of a new building is not enough ; it must be such an increased risk as to increase the rate of insurance.   No legal proof was offered to show an increase of the rate on account of the change in the use of adjoining property.   The fact is the property was rated in the class of extra-hazardous risks, being a livery stable, and no greater rate of insurance was provided than was paid by Losch for the risk assumed.

If no additional premium was payable, because of the alteration or change of the premises ; if the company had provided for no additional premium, then it followed, necessarily, that there was no breach of contract.   Losch built nothing on the adjoining premises.   He leased the vacant lot to another who built a small frame shop.   It did not adjoin the property insured.   If it had been reported to the company no greater premium would have been charged.   The company cannot complain that the court excluded the proof, because it failed to show, as a matter of fact, that there was an increase of the rate of insurance and the payment of additional premium.

Mr. Justice PAXSON delivered the opinion of the Court, March 23d, 1885.

Upon the argument at bar the defendant company set up two distinct grounds of defence, viz.: 1st. A breach of warranty as to incumbrances; and 2d. The erection by the plaintiff below of an additional building near the one insured, by which the risk was increased so as to increase the rate of insurance, of which erection no notice had been given to the company.

It appeared on the trial below that in the plaintiff's application for insurance he answered "no" to the 11th interrogatory, which was: "If incumbered, how and to what amount?" In point of fact, at the time the policy was issued there was a mortgage upon a part of the insured premises. This mortgage was subsequently removed, and a new mortgage, covering the entire premises, placed thereon, with the consent of the defendant company, and for the approval of which they were paid. This condition of things continued for several years.

and until the fire occurred by which the insured premises were destroyed.

There is nothing to commend this branch of the defence to our favorable consideration. An examination of the record shows that it was little relied upon in the trial below, if relied upon at all. No point was put to the court as to the effect of the original mortgage upon the contract of insurance. The alleged warranty was contained in the application; the policy did not in terms make the application a part of the policy. The only clause in the policy which could possibly bear this interpretation is the following: "And this policy is made and accepted in reference to the conditions hereto annexed, as well as the application and survey, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for."

No point was put to the court as to the effect of this clause. The court was not asked to say that it made the application a part of the policy, and thereby incorporated the warranty against incumbrances into the contract of insurance. The court did say in its general charge: "I have already said to you where the defendant undertakes to say that the answer to a certain question in this paper amounts to a warranty, and that warranty does not appear in the body of the policy itself, you are to treat the answers in the application simply as representations, and there can only be a defeat in case the jury find that those representations were falsely made." This was assigned for error, and it is the only assignment which has any possible relation to the matter of the mortgage, or the alleged warranty. All of the other assignments, and all of the points put to the court below by the defendant company, relate to the question of the increase of risk, which was the ground upon which the company refused to pay, and upon which they attempted to defeat a recovery in the court below.

Under the circumstances we are not prepared to reverse the case upon the above extract from the charge. It is not inaccurate as an abstract proposition; if the defendant company desired a more specific instruction they should have asked for it. Moreover, I am unable to see its importance or relevancy to this case. Conceding that the mortgage existed when the application was made and the policy issued, and that the warranty against incumbrances was made a part of the policy, the company are estopped from setting it up to defeat a recovery, for the reason that they subsequently gave their assent to the incumbrance, and were paid for it. And this occurred years before the fire. The palpable iniquity of such a defence may be the reason why it is so dimly shadowed forth upon this record.

It remains to consider the second branch of the defence. In one of the printed "conditions of insurance" I find the following: "If, during the insurance, any alterations be made on the premises, buildings erected, or change made in the use or occupation of the same or neighboring premises, or otherwise, whereby the risk or hazard is increased, so as to increase the rate of insurance, it shall be the duty of the insured to give notice thereof to the secretary, pay the additional premium and obtain the consent of the company thereto in writing, otherwise the insured shall not be entitled to recover for any loss or damage by fire originating in consequence of such change."

No change occurred on the premises insured. There was a change in the surroundings, made after the date of the policy. The insured erected a shop within about twenty feet of the insured premises, for which he obtained the consent of the company and paid an additional premium. He also demised a lot of ground adjoining the premises to a tenant, who erected thereon a frame building which he used as a carriage factory. This building was about fifty feet from the premises insured. No notice of its erection was given to the company, nor was any additional premium paid.

Had the condition of insurance required the insured to give notice to the company of any change in the surroundings, it would have been his duty to give notice of the erection of the carriage factory. Such, however, was not the condition. The notice was only required in case the change was such as to increase the risk or hazard "so as to increase the rate of insurance." Under this clause it is manifest that the insured must be shown to have knowledge that the building would not only increase the risk, but that it would also enhance the rate of insurance. The condition of the policy must be construed most strongly against the company. We are not to assume, when the plaintiff below seeks to recover on his policies for what at least appears to be an honest loss, that he knew the factory building would increase the risk to such an extent as to increase the rate of insurance. There was nothing upon the face of his policy, or in the conditions attached, had he read carefully every word of both, which could have given him this information. It was a fact, the solution of which would be found outside the policy.

There is not a word of evidence to show that the insured knew that the carriage factory would increase the risk to the extent specified in the policy, nor indeed to any extent. There was evidence that the risk was increased, but none that the rates of insurance would be increased thereby. It must be remembered that the factory was about fifty feet away

from the insured premises, and the plaintiff may well have thought there was no material increase of the risk. And it is not clear from the defendant's own testimony that the risk was materially increased. Lewis P. Hecker, a witness on behalf of the company, says in answer to the inquiry whether there was an increase of risk: "Not very much, I should think; the risk was increased a little; it was an additional exposure in the hazardous business carried on; the exposure was great, the risk and hazard, so far as fire was concerned, was increased." Israel Reber, another witness, says: "In my opinion it would be rather more risky." And John H. Helzich, agent of the defendant company, in response to a similar inquiry, answers in this cautious manner: "I would rather think it would (increase the risk); because two hazardous buildings make it more dangerous than one; that is natural."

The building insured was a livery stable, a hazardous risk, for which a high premium was paid. It was to this circumstance the last witness referred to when he spoke of two hazardous buildings.

What has been said practically disposes of the assignments of error. I will say, however, in addition, that the defendant's first, second and third points assume all the facts, as to some of which there was no evidence, and the court below committed no error in rejecting them. The defendant's fourth and eighth points were also properly refused. Conceding that the fire originated in the carriage factory, that fact would not necessarily defeat the plaintiff's right to recover. Such right depended upon other matters not involved in these points. The defendant's fifth point was not pressed below, nor here, and need not be discussed. There is nothing in it.

The remaining assignments relate to the exclusion of evidence offered on the part of the defendant company to show that the erection of the carriage factory would increase the rate of insurance. Most, if not all, of these offers were rejected upon the ground that the witness by whom the proof was proposed to be made, had not the information necessary for that purpose. The ruling was unquestionably right as to most of the cases, and we need not discuss the others for the reason that there was no attempt to show that the insured knew, or even that the circumstances were such that he ought to have known, that the erection of the carriage factory would so materially enhance the risk as to increase the rate of insurance.

Judgment affirmed.