# THE NIAGARA FIRE INS. CO. v. FRANK MILLER.

## ERROR TO THE COURT OF COMMON PLEAS OF BEDFORD COUNTY.

Argued May 10, 1888—Decided May 21, 1888.

A policy of insurance contained the provision: "The assured by the acceptance of this policy hereby warrants that any application, survey, plan, statement or description connected with procuring this insurance, or contained in or referred to in this policy, is true and shall be a part of this policy; that the assured has not overvalued the property herein described nor omitted to state to the company information material to the risk."

The company defended against payment on the grounds: (a) that at the time of the application the personal property insured was under a levy and execution which the assured did not disclose; and (b), that the assured stated that there were judgments entered against him to the amount of $500, when in fact there were judgments against him to the extent of $1,500: *Held*,

1. That, as the policy contained no clause that the insurance should cease if the property in question were taken in execution, and as the goods were still in the possession of the assured when the insurance was effected, he was not bound to report the fact of the levy unless he had knowledge that it would increase the risk.

2. That, as the warranty was not in terms a distinct warranty against incumbrances, and no evidence that the erroneous statement as to the judgments was by accident, ignorance or design, it was not error to instruct, under the evidence in the case, that the company could waive the right to avoid the policy on the ground of the erroneous statement, and to submit the question of the fact of waiver to the jury.

3. That the company was bound to good faith to the assured, and if, with knowledge immediately after the loss of every fact upon which to avoid the policy, it misled the assured for nearly a year by conduct indicating a desire to adjust and pay the loss, and never informed him it would not pay because the policy was avoided, it had no ground to complain if held to be estopped.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 432 January Term 1888, Sup. Ct.; court below, No. 83 April Term 1887, C. P.

On February 28, 1887, an action was brought by Frank Miller against The Niagara Fire Insurance Co., of New York, to

recover upon a policy of insurance dated January 21, 1886, for one year, for $2,100 upon a dwelling and $400 upon the personal property therein contained. The narr was in assumpsit. The plea was non assumpsit, payment with leave, etc., with the following notice of special matter to be offered in evidence by the defendant on the trial of the case :

3. That plaintiff did not comply with the first clause of his policy under the title, " Warranty of the Insured." He omitted to state many things material to the risk. He represented that the judgments and liens against him did not exceed $600, when in truth and in fact they exceeded $1,500. His personal property was seized and taken in execution and in the custody of the sheriff. Had these facts been made known to defendant no policy would have issued ; other liens were entered against plaintiff, and he did not make this known to defendant as he was required to do by his policy.

4. Plaintiff did not comply with any of the terms, provisions, and conditions of his policy under the head and title of " Proceedings in Case of Loss." No statement was made to the New York office. No appraisement completed before suit commenced. No suit commenced within the time specified in the policy of insurance.

5. Defendant will insist that plaintiff shall show full compliance with all the stipulations in his policy under this head, and generally that he shall be held to strict proof of the performance of all of his covenants, agreements, and stipulations as stated and set forth in his policy of insurance.

At the trial on March 27, 1888, the policy was found to contain the following provisions :

### WARRANTY OF THE INSURED.

The assured by the acceptance of this policy hereby warrants that any application, survey, plan, statement, or description connected with procuring this insurance, or contained in or referred to in this policy, is true and shall be a part of this policy ; that the assured has not overvalued the property herein described nor omitted to state to this company information material to risk. And this company shall not be bound under this policy by any act or statement made to us by any agent or other person which is not contained in this policy or in any written paper above mentioned.

Charge of Court below.

## PROCEEDINGS IN CASE OF LOSS.

If the loss sustained be upon a building, fixtures, or machinery, the assured shall, if required, furnish duly verified plans and specifications of such property destroyed or damaged.

It is hereby expressly provided that no suit or action against this company for the recovery of any claim by virtue of this policy, shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements, nor unless such suit or action shall be commenced within twelve months next after the fire shall have occurred.

The facts appearing from the evidence are fully indicated in the charge to the jury, BAER, P. J.:

The plaintiff in this case, on the 21st of January, 1886, procured from the defendant company, a policy of insurance on his house at Hyndman, and personal goods. The policy promises to pay, in case of loss, such an amount, not exceeding the sum insured, and not exceeding what it would cost to repair or replace the destroyed property, estimated at a cash value and deducting a suitable amount for depreciation. The house was insured at $2,100, and the household goods at $400. This policy was sent by mail the next day or soon after. The premium was paid at a later day, but was accepted by the company, and so it is the same as if paid at once. The insured house burned down on March 2, 1886, and the loss was a total loss. The personal property also burned, but not all of it. The insurance on the personal property was $400; and, though the goods burned were alleged to be worth $490, still $400 is all that can be obtained if the plaintiff is entitled under the evidence to recover.

The terms of the contract require certain notice. Preliminary notice was given, and proofs of loss were made and sent. It seems the company desired a more formal and specific statement which, it seems, was also made. The plaintiff having established by proof the insurance, and having made proof of loss by fire of the house and the personal property, and having given due notice of the fire with proofs of loss, is entitled to recover the damages sustained by the fire according to the terms of the policy, on proof of the cash value

of the property destroyed, less a suitable amount allowed for depreciation; unless you find that the defendant company has by evidence in the case shown that for some reason the plaintiff is not entitled to recover.

The defence set up is:

1. That the plaintiff, at the time of applying for insurance, omitted to state matters that were material to the risk, saying that judgments and liens against him did not exceed $600, whereas they exceeded $1,500.

2. That the plaintiff did not make known the fact that the sheriff had a levy on his household goods at the time.

3. That the plaintiff has not complied with the terms and conditions of his policy under the head of "Proceedings in Case of Loss."

They called Mr. Moore as witness for the defendant company, who is also the agent who placed the risk, and he says he inquired of Miller, what, if any, liens existed, and that Miller said $500 or $600, and that he said nothing about the sheriff's having a levy on his personal goods. The manager took an affidavit from the plaintiff before Squire Burkett, and in that Mr. Miller replies to interrogatories that were propounded by the manager, that he told Moore at the time that the judgments against him were $500 or $600, and that he had no recollection whether he told him the sheriff had a levy on his goods. The records produced in evidence show that the sheriff had a levy on his personal property, but the proof shows that it was still in the actual possession of Miller; and the records also show that the judgments then against him were about $1,500.

[Assuming for the purpose of the statement that, as the defendant claims by the terms of the warranty, this state of facts created a warranty, and that the breach of it made the policy void according to its terms, we still have to say to you that if the defendant, having knowledge of the breach, had time to make it void and did not do so, it is not void; for the law is that it is voidable at the will and pleasure of the company, and having not done so, the policy is valid. Whether or not such opportunity was waived is a question of fact for the jury.][2]

But, before answering the question of waiver, you must first find whether there was a breach. First, what were the facts?

Was there, in point of fact, a representation of some facts and a concealment of others that were material to the risk; that Moore claims would be material to the risk?

Defendant argued that Mr. Moore is corroborated by Mr. Tenney, the manager, by Burkett, and by the affidavit. Is this so? The jury will remember that Moore said no one else was present. Miller also says the same. What Moore says, Miller says he said, at the time of the taking of the insurance. It is the affidavit of Miller that is called on as corroboration. Burkett merely swore him and took it down. If a court house full of people would say they saw and heard that, it would not make it stronger: it would still be the oath of Miller.

Moore's statement in this case, the plaintiff undertakes to answer:—First, he swears that he told Moore that he knew of $500 or $600 of judgments, but that there might be more and he not know; that Moore should inquire of Prothonotary Emons; that he told him his personal property was levied on; that his object was to get insurance to procure a loan by mortgage to pay his debts. Having his attention called to the affidavit, Miller says that he was in great trouble; that it was but a few days after the fire, and that he hardly knew what he was about. The affidavit was dated on the 5th of March, and the fire was on the 2d, yet in that affidavit the fire was stated to have been on the 1st. He says that he answered questions propounded by the manager, and that what he said about judgments was true; but that he was not asked if he told Moore anything more; that if he had been asked he would have told it. From this plaintiff's counsel argue that there is no inconsistency between Miller's affidavit and his oath on the stand. It is alleged that there was no cross-examination, you have been in court long enough to know how that is done, and only the answers of Miller written down, and, as there was no cross-examination Moore is not thereby corroborated.

We say to you that this is a question of fact for you to decide between these witnesses. Tenney says Miller was cool and collected; the 'Squire says he took the testimony down, and Miller also says the testimony was written by the 'Squire. You must determine what were the facts at the time of taking this testimony. If the facts were as Mr. Moore testified, then

there was a warranty and breach; but if you find the facts as Miller testified, then there was no warranty and breach, and this would be the end of the case.

If there was a breach of warranty, than we go further. We inquire then whether or not the defendant waived a right by allowing the matter to run on from time to time. A waiver need not be in writing. The breach is alleged to arise from the alleged statement of Miller that the liens were $500 or $600, whereas they were $1,500, and in not stating that his goods were under levy.

As evidence on which the plaintiff asks the jury to find a waiver of this breach, he alleges :—

First, that due notice of the fire was given, and prior to March 31st, a statement, or proof of loss, including statement of liens, was duly mailed to the company and received. In reply to which, the company wrote : " We are in receipt of yours, inclosing statement of loss, etc., which we have forwarded to our managers, Messrs. Brown & Tenney, Philadelphia, who have charge of all losses in Pennsylvania."

That on April 28, 1886, in reply to a letter of April 22d, Mr. John Tenney, a manager from the office of Philadelphia, writes : " We return herewith the alleged proof of loss of Mr. Frank Miller at hand with your favor of 30th ult., and shall be glad if you will have Mr. Miller furnish us with entirely new proof on blank inclosed, made out in full compliance with the terms and conditions of our policy."

That the proof of loss as hereby suggested or requested was in due time made out and forwarded.

That the plaintiff having waited until June 26th, caused his attorney to write on the subject; and to the inquiry, Mr. Brown, a manager of the Philadelphia department, writes on the 28th : " The matter of the claim of Frank Miller is in the hands of our associate manager, Mr. Tenney, who is out of town to-day, and will be absent during this week. It shall be referred to him for immediate action upon his return."

That on the 8th of July, 1886, John Tenney, manager, writes in reply to the letter of June 26th, and says substantially : " We are looking into the matter of Frank Miller's loss, and will communicate with you another time. We desire you in the meantime to furnish us with verified plans and specifi-

cations of the building destroyed, to be attached and to become a part of the proof of loss furnished with your favor of the 14th inst."

That the plans and specifications were made by Mr. Horn, an architect and builder, and sent on December 16, 1886, mailed as previous letters had been.

On January 20, 1887, a letter was addressed to Mr. Brown, and asked: " Will you inform me if the company has any objections, and if any, what they are, to the payment of the loss ? " It also asked that appraisers be appointed. There was no reply to this. Appraisers were appointed; one by the plaintiff and one by the company. The appraisers met and appraised the loss of personal property; then they entered upon the examination of the loss by the burning of the house. They progressed to a certain extent when the appraiser chosen by the company alleged that he could no longer remain, and left, and the appraisement was not completed.

That up to this time, although nearly a year had transpired, and though the time limited by the policy within which to bring suit was one year from the date of the fire, no objection was stated or made that in the least informed the plaintiff on what grounds, if any, the defendant objected to payment. That he was led on by letters suggesting more formal proofs of loss and specifications, from time to time ; and when letters were received, he was not informed of any defect, though he asked to be informed, what, if any, objections there were.

That before the formal proof of loss, and long before the request for appraisers, the company, if the evidence is believed, knew the extent of the incumbrance that existed at the time of the insurance, and knew that the personal property was then under levy, but still in plaintiff's possession at the time of the insurance, and knew what it is alleged Miller said concerning the liens and levy.

That it never asserted an intention to resist payment because of an alleged breach of warranty arising from misstatement or concealment and that the plaintiff was led on to go to the expense incident to an appraisement and to making more formal proofs of loss.

This line and course of conduct, the plaintiff alleges, estops the defendant now from interposing or setting up a breach of

warranty arising from any false statement as to amount of liens or concealment of fact of levy on personal goods.

[If you so find the facts, then though there be a condition in the policy that makes the policy void by such breach of warranty, yet the policy was not absolutely void, but it was only voidable if the company, after having information of the facts that create the breach of warranty, in a reasonable time, and without misleading the party insured into unnecessary expense, chose to make it void and so informed the assured.] [3]

But if they did not do so, the jury, if they find the facts as alleged, may find that the breach of warranty was waived. And, if they find it was waived, then, unless some other ground of defence is established, the plaintiff would be entitled to the verdict.

Whether the defence set up, that the provisions of the policy under the head of "Proceedings in Case of Loss" were not complied with, has been sustained, is a question of fact for the jury on the evidence.

Now we are asked to charge you on certain points. We read the points of the plaintiff first:

1. That under all the evidence in this case the verdict must be for the plaintiff.

Answer: We decline to affirm that point.

2. If the jury believe that the defendant, three days after the fire, sent the manager of the company to plaintiff's premises, who inquired as to the full circumstances attending the taking of the insurance, and with this information and full knowledge of all the statements now claimed by defendant to have been made by plaintiff at procuring insurance, and with the further information of the actual amount of liens and that the personal property had been levied on by the sheriff, the company called on the plaintiff for proofs of loss which were forwarded and then returned by the defendant for correction, and corrected proofs on the printed blank sent for that purpose, by the company, were forwarded by plaintiff, and after that defendant called for plans and specifications, which he at great expense and trouble procured, and during all this time made no objection to the payment of this loss on any grounds, and wrote plaintiff's attorney the letters in evidence, the jury may find from the facts and circumstances that the company

waived the forfeiture of the policy on the grounds of any misstatement as to liens or execution on personal property and incumbrances, or any omission to state fully in relation thereto ; and then the verdict should be for plaintiff.

Answer : That point is affirmed.[1]

3. If the jury believe that Miller, in procuring the insurance made the statements and representations in the manner testified to by the plaintiff, then he is entitled to recover under the contract of insurance and the pleadings in the case, if he made no concealments and was guilty of no fraud or bad faith.

Answer : This is affirmed.[4]

The jury returned a verdict in favor of the plaintiff for $2,751.25 ; and judgment being entered thereon, the defendant took this writ assigning as error :

1. The answer to the plaintiff's second point.[1]
2. The part of the charge embraced in [ ][2]
3. The part of the charge embraced in [ ][3]
4. The answer to the plaintiff's point.[4]

*Mr. Morton P. Henry* (with him *Mr. John Cessna* and *Mr. J. H. Longenecker*), for the plaintiff in error :

1. The ruling of the trial judge is founded on a passage in Wood on Insurance, 837, the authority for which is the case of Webster v. Phoenix Ins. Co., 36 Wis. 67. The adoption of the principle of this case, in courts which have followed it, necessarily leads to this, that to act on information received by the insurer of any breach of duty by the assured, destroys the protection to which the insurer is entitled against fraudulent or excessive claims being presented, and from any means of ascertaining whether there are any contributing interests or not, or right of subrogation against wrongdoers or others, facts which are to be ascertained by the preliminary proofs. Titus v. Insurance Co., 81 N. Y. 410, and German Fire Ins. Co. v. Grunert, 112 Ill. 68, are illustrations to what result a wrong principle will lead. So in this case ; the plaintiff on the trial below gave a qualified denial as to his statement of the amount of the judgments against him, and averred that the company's agent was informed of the execution at the time of his application. Now, according to the cases referred to, the company, as soon as it receives such information, must

take the risk of proving the truth of it, or waive the wrong done to it by asking for a compliance with the terms of the policy as to preliminary proof.

2. The law in Pennsylvania seems to be clear on the point, that an election to treat as in full force a policy which has been vitiated by the act of the insured, cannot be inferred or presumed from the company requiring the assured to do what he has agreed to do, before any suit shall be commenced: Beatty v. Insurance Co, 66 Pa. 9; Mueller v. Insurance Co., 87 Pa. 399; Inland Ins. Co. v. Stauffer, 33 Pa. 397; DeSilver v. Insurance Co., 38 Pa. 130; Girard F. & M. Ins. Co. v. Hebard, 95 Pa. 45; Diehl v. Insurance Co, 58 Pa. 452; Buckley v. Garrett, 47 Pa. 212.   And see Phoenix Ins. Co. v. Stevenson, 78 Ky. 150; Graham v. Insurance Co., 9 Daly 341; Blossom v. Insurance Co., 64 N. Y. 162; Underwood v. Insurance Co., 57 N. Y. 500; Brink v. Insurance Co., 70 N. Y. 593; Wood on Insurance, 736.

3. It was error to leave to the jury to find whether by the lapse of time and by the demand of performance of the conditions as to preliminary proofs, a waiver of the forfeiture incurred by reason of misrepresentation and concealment, might be inferred.   Delay could not affect the right of the company to defend on the merits.   The error is not merely verbal; it treats the policy as still in force until the insurer elected to avoid it, when in fact the policy was already avoided by a breach of the warranty " that the assured has not omitted to state to this company any information material to the risk:" Girard F. & M. Ins. Co. v. Hebard, 95 Pa. 51.   It was capable of being renewed, as the forfeiture might be waived by the acts of the company which were consistent only with an agreement to treat it as continuing in force; but no election was required to forfeit the policy for breach of the warranty, and no time was required within which election must be made: Trask v. Insurance Co., 29 Pa. 200.   Silence by the company did not admit liability: it is more consistent with a denial of liability, than an admission of it: Royal Ins. Co. v. Beatty, 119 Pa. 6.

4. The answer to the plaintiff's third point, assigned as error, is based upon the ruling of this court in Thierolf v. Insurance Co., 110 Pa. 37.   That case has no application to a

concealment of the amount of the lien at the time of the application for insurance. It was the case of a condition, the breach of which avoided the policy; not a warranty, literal compliance with which is necessary to create a contract: DeHahn v. Hartley, 1 Term R. 344; 1 Parsons, Marine Insurance, 337. The warranty of the assured in this case was broken, if he misstated or concealed the amount of the liens on the real estate, or concealed the fact that the personal property was under execution: Penn. M. F. Ins. Co. v. Schmidt, 119 Pa. 449; Brown v. Insurance Co., 41 Pa. 187; Smith v. Insurance Co., 25 Barb. 497.

*Mr. John M. Reynolds* (with him *Mr. John H. Jordan*), for the defendant in error:

1. The doctrine of waiver is recognized in this state, and it has been repeatedly ruled that an insurance company can and may waive a forfeiture arising from the violation of any provision or requirement of a policy, and that a waiver may be inferred from any act of the insurer evincing a recognition of liability; and, moreover, that whether there has been such a waiver or not, is a question of fact that must be submitted to the jury: Lebanon M. I. Co. v. Erb, 112 Pa. 149; Thierolf v. Insurance Co., 110 Pa. 41; Allemania F. Ins. Co. v. Pittsburgh Exp. Soc., 10 Cent. R. 293; Elliott v. Insurance Co., 117 Pa. 548; Elkins v. Insurance Co., 113 Pa. 387; Commercial Union Ass. Co. v. Hocking, 115 Pa. 407, Lycoming Ins. Co. v. Schreffler, 42 Pa. 188. The cases cited by the defendant do not support the construction put upon them. In all of them, the evidence showed either positive acts on the part of the company repugnant to the idea of a waiver, or the assured, by reason of his own acts, was not in a condition to assert the effect of the company's conduct.

2. We concede the right of the company to call for proofs of loss and all other information necessary to enable it to determine whether the assured has complied with his contract of insurance. But the principle involved goes further. The company pursued a line of conduct utterly inconsistent with the assertion of a forfeiture of the policy, and consistent with no other purpose than that of ascertaining the amount and an adjustment of this loss, with such a trifling with the rights

acquired by the assured under the terms of his policy, as no court could tolerate as consistent with the defence invoked, and certainly the most glaring evidence of bad faith. These views are sustained by many authorities: Webster v. Insurance Co., 36 Wis. 67; Bigelow on Estoppel, 578; Viele v. Insurance Co., 26 Ia. 9; Miner v. Insurance Co., 27 Wis. 693; Gaus v. Insurance Co., 43 Wis. 108; Cannon v. Insurance Co., 53 Wis. 585; Titus v. Insurance Co., 81 N. Y. 410; German F. Ins. Co. v. Grunert, 112 Ill. 68; Penn. F. Ins. Co. v. Kittle, 39 Mich. 51; Hollis v. Insurance Co., 65 Ia. 454.

OPINION, MR. JUSTICE PAXSON:

This was an action of assumpsit upon a policy of insurance. The policy contained the following warranty:

" The assured by the acceptance of this policy hereby warrants that any application, survey, plan, statement, or description connected with procuring this insurance, or contained in or referred to in this policy, is true and shall be a part of this policy; that the assured has not overvalued the property herein described, nor omitted to state to this company information material to the risk. And this company shall not be bound under this policy by any act or statement made to us by any agent or other person which is not contained in this policy, or in any written paper above mentioned."

There is nothing in the record to indicate that the claim was not for an honest loss. The company defended upon two grounds, (*a*) that at the time of the application for the insurance the personal property insured was under levy and execution on a judgment against the plaintiff, which he failed to disclose to the company's agent at the time the insurance was effected; and (*b*) that the plaintiff stated that there were judgments against him to the amount of $500, when in fact judgments existed to the extent of $1,500, which were a lien on the insured real estate. These objections were based upon the allegation that the facts referred to increased the risk, and had they been disclosed to the company a larger premium would have been demanded.

It will be noticed that the warranty is not in terms a warranty against incumbrances, nor did the policy contain a clause that the insurance should cease in case the property in ques-

tion should be levied upon or taken in execution. The fact was that the goods insured were not taken out of the possession of the plaintiff by the sheriff. Was the insured bound to communicate the fact of the execution to the company? If it increased the risk and the plaintiff knew that it increased it, we think it was his duty under the clause of the policy which we have referred to, to have notified the company, and upon his failure to do so, he would not be entitled to recover. But what was there in the mere fact of the paper levy to inform the insured that the risk was thereby increased? The goods still remained in his possession, and unless he contemplated some fraud, which we are not to presume, or unless there was something in the policy to warn him that the company regarded a levy as an increase of risk, how can we say that he was bound to know that it was increased? We have held in Lebanon Mutual Insurance Company v. Losch, 109 Pa. 100, and in Rife v. the same company, 115 Pa. 530, that unless the assured has knowledge that a particular fact will increase the risk, he is not bound to report such fact to the company. Were we to sustain a contrary doctrine it would make a clause like the one referred to in this policy, a mere device to delude ignorant people. It is not to be presumed that the average man or woman who seeks to protect his or her property by insurance is an expert in the science of insurance, especially upon that branch of it which refers to the increase of risk. It is a very simple matter for the company to inform the assured by the terms of its policy or otherwise, what it regards as an increase of risk.

The only remaining point is the matter of the incumbrances. There was not, as I have before observed, a distinct warranty against incumbrances. The warranty was against untrue statements in the application. It is not denied that the incumbrances exceeded the amount there stated by the insured. Whether it was by accident, ignorance, or design does not appear. The court below charged the jury, and this is the main contention here, that this avoided the policy at the election of the company, but that the latter could waive the right to avoid it, and submitted the question of waiver to the jury, who found against the company.

I do not think that the mere fact of the company's calling

upon the assured to furnish the preliminary proofs of loss as required by the policy, would of itself be a waiver of the company's right to avoid the policy. Cases might arise where such proofs might be necessary to enable the company to show the breach of warranty. There must be an intention to waive a forfeiture by notice or acts inconsistent with acts exercising the right to forfeit: Diehl v. Insurance Co., 58 Pa. 443; Buckley v. Garrett, 47 Pa. 204. The case was not submitted to the jury upon the narrow ground that the mere fact of calling for proofs of loss was such a waiver. There was a great deal more in the case than this. There was testimony that Mr. Moore, the agent of the company who placed the risk, was told by the assured that there were $500 or $600 of judgments, and there might be more, and that he, the agent, should see the prothonotary about it; that the company before the proofs of loss, and with full knowledge of the incumbrances, not only called for proofs of loss, but required the assured to furnish full plans and specifications of the building destroyed, which were made out by the assured's architect and forwarded; that it also joined in the appointment of appraisers; "that up to this time, although nearly a year had transpired, and though the time limited by the policy within which to bring suit was one year from the date of the fire, no objection was stated or made that in the least informed the plaintiff on what grounds, if any, the defendant objected to payment; that he was led on by letters suggesting more formal proofs of loss and specifications from time to time; and, when letters were received, he was not informed of any defect, though he asked to be informed what, if any, objections there were." It is difficult to see how the learned court below could have avoided the submission of such matters as these to the jury. If believed by them they fairly amounted to an estoppel. The company was bound to good faith to the assured, and if, with the knowledge in its possession of every fact upon which to avoid the policy, they misled the plaintiff for nearly a year, subjected him to the expense of procuring plans and specifications of his building, and never informed him that they would not pay because the policy was avoided, they have no ground to complain if they are now held to be estopped from setting up such a defence.

Statement of Facts.

I find nothing to conflict with these views in any of our decided cases. On the contrary, I find much to sustain them. The case in hand, however, stands to some extent upon its own facts, and for this reason I have considered a discussion of the cases cited unnecessary.

Judgment affirmed.