## SILAS McFARLAND v. KITTANNING INS. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BLAIR COUNTY.

Argued April 25, 1890—Decided May 12, 1890.
[To be reported.]

1. Notwithstanding a stipulation in a policy of insurance that nothing less than an express agreement, indorsed thereon, shall be construed as a waiver of any of its conditions, parol testimony is admissible to show a waiver by acts in pais of the insurance company: Gould v. Insurance Co., ante, 570, followed; Universal F. Ins. Co. v. Weiss, 106 Pa. 20, distinguished.

2. When, however, the policy contains a condition of such substantial effect that the policy shall be void if the property insured be encumbered at its date or shall afterwards become so, without notice to the company, it is incumbent on the insured to establish the facts making out the alleged parol waiver thereof by a clear preponderance of evidence.

3. That the company, with knowledge of every fact upon which it could avoid the policy, misled and delayed the insured by promising to pay the loss, prevented him from rebuilding by its negotiations, put him to trouble and expense in proving the loss, and procured a mutually binding adjustment of the amount of the loss by appraisers, is sufficient evidence of such waiver.

Statement of Facts.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS and MITCHELL, JJ.

No. 391 January Term 1889, Sup. Ct.; court below, No. 24
January Term 1888, C. P.

On October 14, 1887, Silas McFarland brought assumpsit
against the Kittanning Insurance Company upon a policy of
insurance against fire or lightning, issued by the defendant com-
pany, upon the plaintiff's barn and the contents thereof in
Antis township. The defendant's plea was non-assumpsit.

At the trial on March 17, 1890, the following facts were
shown: On October 14, 1884, the defendant company issued
to the plaintiff the policy in suit, containing the following pro-
visions and stipulations:

" IV. When property, insured by this policy, or any part there-
of, shall be alienated, or in case of any transfer or change of
title to the property insured, or any part thereof, or of any
interest therein, or if any part of such property shall be encum-
bered by mortgage, judgment or otherwise, at the time of effect-
ing this insurance, or if it shall hereafter become in any manner
encumbered, or if proceedings be commenced to foreclose any
mortgage upon any property herein insured, without the con-
sent of this company indorsed hereon, or if the property hereby
insured, personal or real, shall be levied upon, attached, or taken
into possession or custody, under any legal process, or the title
or possession be disputed in any proceeding at law or equity,
this policy shall cease to be binding on this company."

" VII. . . . . This company shall not be liable for a greater
sum than two thirds the actual cash value of the buildings
burned, at the time of the fire; . . . . ."

" X. The use of general terms, or anything less than a distinct
specific agreement clearly expressed, and indorsed on this
policy, shall not be construed as a waiver of any printed condi-
tion or restriction therein, and no notice to, or any consent or
agreement by any local agent, shall affect any condition of this
policy, until such consent or agreement is indorsed hereon in
writing, and the amount insured shall not be construed as a
valued policy."

" XVII. The assured, by virtue of this policy, becomes a
member of the Kittanning Insurance Company, and is entitled

Statement of Facts.

to participate in its earnings, as may be declared by the board of directors, in accordance with the provisions of its charter and by-laws."

"XX. Persons sustaining loss or damage by fire, shall forthwith give notice thereof in writing to the secretary of this company; and, as soon after as possible, they shall deliver as particular an account of their loss and damage as the nature of the case will admit, signed with their own hands; and they shall accompany the same with their oath or affirmation, declaring the said account to be true and just; showing also, whether any and what other insurance has been made on the same property, giving a copy of the written portion of the policy of each company; what was the whole cash value of the subject insured; in what general manner (as to trade, manufactory, merchandise or otherwise) the building insured, or containing the subject insured and the several parts thereof, were occupied at the time of the loss, and who were the occupants of such building, and when and how the fire originated, with all the details thereof so far as they are informed, know or believe; . . . . .

"XXI. All fraud in procuring this policy, . . . . or any neglect or refusal to comply with the conditions of this policy, shall cause a forfeiture of all claim on the insurers, and shall be a full bar to all recovery for loss under this policy.

"XXII. The company, at any time, before or after proof of loss, and the assured, after proof of loss to the company, may demand, in writing, that the value and amount of loss and damage shall be submitted to disinterested and impartial appraisers, to be selected one by the assured and one by the company, and the two so selected shall if necessary select a third man; and the said appraisers so selected shall form a board of appraisers, and they, or any two of them, may appraise, determine, decide, and award, in writing, the amount of damage and loss to the property covered by the policy and damaged by fire, and the appraisal or award in writing of any two of them shall be conclusive and binding upon the parties as to the extent and amount of such damage and loss only, but shall not affect or waive any other conditions of the policy. And no suit or action at law or equity shall be instituted or maintained against the company, until an appraisal and award as to the loss or

damage shall have been had, and the amount thereof so deter-
mined.

"XXIII. Payment of losses shall be made ninety days after complete proofs and adjustment thereof, at the office of the company, in Kittanning, Penn'a.

" ☞ And it is hereby understood and agreed by and between this company and the assured, that this policy is made and accepted in reference to the foregoing terms and conditions, which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for in writing."

At the date of the policy, there were standing open upon the record seven judgment liens against the real estate of the insured, all of which were subsequently satisfied; four of them prior to January, 1887, one in February, 1887, and the remaining two in March, 1887. During the life of the policy, six other judgment liens were entered, for amounts aggregating $379.06. Of these, one was satisfied in December, 1885, four were satisfied in March, 1887, and one was satisfied at a date not given. No recognition of the fact that the real property was encumbered at the date of the policy was made therein, nor was any consent of the company to the entry of any of the judgments indorsed upon it, nor was it shown that the plaintiff ever notified the company of the entry of any of the encumbrances.

On the night of January 6, or the morning of January 7, 1887, the plaintiff's barn and its contents were totally destroyed by fire. On the latter day, the plaintiff prepared a statement setting forth the fact of the fire, a list of the property destroyed, and the fact that the origin of the fire was unknown, verified the statement by his affidavit, and sent it to the home office of the company, accompanied by a letter requesting that an agent be sent to view the premises and settle the loss. In response, the secretary of the company wrote to the plaintiff on January 11th, acknowledging receipt of the letter, promising that it would receive early attention, and asking that in the meantime the plaintiff send information as to the supposed origin of the fire, who occupied the barn, etc. This request

for further information the plaintiff responded to on January 14th.

About four days later, W. D. Crawford, who was not a regular agent of the defendant, but was occasionally employed by it as an adjuster of losses, was sent by the company to see the plaintiff, " see his loss, look over it and make proofs." He came to the plaintiff's house, inspected the remains of the barn, and then went with the plaintiff to the Ward House, at Tyrone. The plaintiff testified that when they arrived at the Ward House, Crawford showed to the witness the proofs of loss that had been sent to the company, and also a list of the judgments that were standing on the docket; that the witness then gave some explanations to the effect that he was always buying and trading in land and had bought some since the date of the policy, and of course there were some judgments against him; that Crawford studied a little, shoved the list of liens to one side and said: " McFarland, I don't see anything better we can do than hold an appraisement; you choose one man and we will choose a man, and if the two can't appraise it, let them get a third man; we will have to stand to it, and you will have to stand to it: " that the witness finally agreed to this, and Crawford said the appraisement would be held in two or three weeks.

On March 30, 1887, Crawford, acting for the defendant, sent to the plaintiff duplicate blank agreements for an appraisement, which, after reciting the stipulation of the policy upon that subject, and the fact that " the parties interested have failed to agree upon the proper amount of damage to be awarded," stipulated for the submission of that question to appraisers, specified the matters to be considered by them in determining the loss, and limited the scope of their inquiry by the following provision : " It is expressly understood that said appraisers shall not decide upon any question relating to the construction of said policy, or any other matters of difference within the terms and conditions of the insurance, but their acts shall have binding effect only as to the actual cash value of or damage to such property, covered by policy No. 25,732, of said company, as may be found to have been saved in a damaged condition."

Along with these blanks, the plaintiff received a letter in the handwriting of the company's secretary, but signed by Crawford for the company, suggesting that as each party had

the privilege of choosing one of the appraisers, the plaintiff should name as his choice a competent builder, and requesting him to sign both blanks and mail one of them to the company. The plaintiff complied with this request.

Delay taking place in the holding of the appraisement, some correspondence on this subject passèd between the parties, the plaintiff complaining that the delay greatly inconvenienced him by preventing the rebuilding of the barn.   Finally, on May 26, 1887, the appraiser selected by the defendant being sick, Crawford appeared and proposed to act in his place as the appraiser for the company.   The plaintiff assented, and on that day the appraisers made an award in writing, appraising the damages to the barn at $775.   Testimony for the plaintiff tended to show that Crawford stated it was not worth while to make any appraisement of the personal property destroyed, as he would give the plaintiff the amount claimed upon it or within $5 or so of that, and said, after the appraisement was completed, that the plaintiff would be paid in ninety days.

In pursuance of an arrangement therefor, the plaintiff met Crawford at Altoona on the morning after the appraisement. The plaintiff's testimony as to what then took place was as follows :

" Q. Did he have these papers with him ?   A. He had the appraisement papers with him and showed me—he wanted to show me,—I didn't understand figures very well, and he added it up, and he said I would get $577 and something.   That's the way he brought it up.   Q. What did he say to you about the payment of it ?   A. I says to him, 'What about the inside— what was lost inside ? '   He says, 'We'll see about that again ; ' and I says—I kind of got a little mad—I says to him, ' I understand that I will only have to law you at last, any way.   By what I hear everybody saying I will have to law you at last, at any rate ; ' but he made no answer.   Q. What, if anything, did he say to you as to when they would pay you if you accepted the amount he figured up ?   A. He told me he would pay me in 90 days.   Q. That he would pay you in 90 days ? A. In 90 days.   Q. Did you agree to the offer ?   A. I was afraid to sign the paper.   I didn't like to sign the paper, because I didn't know what I was signing.   I didn't understand it.   I never had got anything insured in my life before."

### Charge of Court below.

Crawford, testifying for the defendant, denied that he had ever told the plaintiff that the company would pay the loss, but said that what he told him was that the company's terms were to pay in ninety days from the time proofs of loss were filed. He testified further that the object of the meeting at Altoona was to make out complete proofs of loss, and that while engaged in so doing the witness learned for the first time there were encumbrances on the property; that at the time the witness and the plaintiff were together at the Ward House in Tyrone, the witness did not produce a list of liens, and was unaware that there were any against the property; that the witness discovered at Altoona an error of $100 in adding up the items in the appraisement, explained this to the plaintiff, and showed him that according to the conditions of the policy he was entitled only to the " two thirds of the actual cash value of the building which the award calls for," and the plaintiff said " he wouldn't do anything," and for this reason the proofs of loss were never completed.

On September 28, 1887, the plaintiff's attorneys wrote to the defendant, notifying the company that his claim had been placed in their hands for collection, and expressing a hope that it might be adjusted without suit. Their letter was referred to S. G. W. Brown, an agent of the company, who replied to it that he would visit the attorneys some time during the month of October, 1887. Neither in any of the correspondence with reference to the plaintiff's claim, nor otherwise, was any objection to its payment raised, upon the ground of the encumbrances against the plaintiff's property, prior to the bringing of this suit.

At the close of the testimony, the court, DEAN, P. J., charged the jury as follows :

This plaintiff, Silas McFarland, sues the Kittanning Insurance Company on a contract of insurance against loss by fire to the extent of $1,500 on his barn and personal property in Antis township, in this county. He exhibits in evidence an insurance policy with no less than twenty-five conditions, printed in small type, which I can hardly read ; not only twenty-five printed conditions, but quite a number of these having many distinct stipulations. The plaintiff accepted this policy, say-

Charge of Court below.

ing thereby that his recovery should depend on a strict compliance with these conditions. Not only does he accept it and make it a part of the contract that his recovery shall depend upon these conditions, but he goes further and says, in effect, that he agrees there shall be no waiver of any one of these printed conditions, unless by a specific waiver indorsed in writing on the policy.

The defendant has shown here that there were encumbrances on this property at the time it was insured, and, immediately after, others were entered to the amount of several hundred dollars. No notice was given the company of these encumbrances. Now here is the contract:

"When property insured by this policy or any part thereof shall be alienated, or in case of any transfer or change of title to the property insured or any part thereof, or any interest therein, or if any part of such property shall be encumbered by mortgage, judgment or otherwise at the time of effecting this insurance, or if it shall hereafter become in any manner encumbered, or if proceedings be commenced to foreclose any mortgage upon any property herein insured, without the consent of this company indorsed hereon, or if the property hereby insured, personal or real, shall be levied upon, attached or taken into possession or custody under any legal process, or the title or possession be disputed in any proceeding in law or equity, this policy shall cease to be binding on the company."

There were encumbrances on the property at the time of the insurance, and others obtained afterwards. The plaintiff agrees that the policy shall become void if that shall happen. Then he further agrees that there shall be no waiver of this condition unless it be expressed in writing on the policy. I do not say that a sane man should [not] accept a policy of this kind; but I say that when a sane man does accept such a policy, and these stipulations are pleaded to defeat a recovery for a loss, he cannot expect the court to violate the law and the contract to aid him, however great may be the hardship to him. There is some evidence of parol waiver, but to submit it to you we would have to disregard altogether the stipulation that there shall be no waiver except in writing indorsed on the policy.

There is no case here for you on the facts. There are no disputed facts. It is altogether a question of law for the court.

If I should err in this ruling, I am glad to know the plaintiff can have me corrected by a higher court. You will, therefore, render a verdict for defendant.

The jury found for the defendant, as directed, and judgment was entered upon the verdict; whereupon, the plaintiff took this appeal, specifying that the court erred:

1. In not submitting the case to the jury upon the testimony.
2. In directing a verdict for the defendant.

*Mr. A. A. Stevens* (with him *Mr. G. L. Owens*), for the appellant:

1. There was abundant evidence of a waiver by the company of the conditions of the policy set up to defeat the plaintiff's claim, and the case should have been submitted to the jury: Wachter v. Assurance Co., 132 Pa. 428; Snowden v. Insurance Co., 122 Pa. 510; Girard L. Ins. Co. v. Insurance Co., 97 Pa. 15; Coursin v. Insurance Co., 46 Pa. 323; Thierolf v. Insurance Co., 110 Pa. 41; Penna. F. Ins. Co. v. Dougherty, 102 Pa. 568; Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149; Eureka Ins. Co. v. Robinson, 56 Pa. 256; Niagara F. Ins. Co. v. Miller, 120 Pa. 504; Elkins v. Insurance Co., 113 Pa. 386. If the other formal conditions of the policy can be waived, why cannot the tenth, which provides that there shall be no waiver otherwise than by indorsement on the policy, be waived too? The demand for an appraisement was a waiver, by the terms of the policy, of any prior forfeiture.

2. In holding that the tenth condition could not be waived, the court below was misled by a misapprehension of the decision in Universal F. Ins. Co. v. Weiss, 106 Pa. 20, which rested upon an entirely different condition, in the policy there considered, from the one resembling the tenth condition of our policy. If that decision was correctly interpreted, it stands alone and has been ignored in every case since decided. Such a provision will not disable the company from giving a waiver by parol: Elkins v. Insurance Co., 113 Pa. 386; National Ins. Co. v. Brown, 128 Pa. 386; Wachter v. Assurance Co., 132 Pa. 428; Insurance Co. v. McCrua, 41 Am. Rep. 652; N. W. Iron Co. v. Insurance Co., 26 Wis. 78; Warren v. Insurance Co., 16 Wis. 439; Pechner v. Insurance Co., 65 N. Y. 195; Union etc.

Ins. Co. v. Wilkinson, 13 Wall. 222; Knickerbocker L. Ins. Co. v. Norton, 96 U. S. 234; Wood on Insurance, 496, 497; Insurance Co. v. Slockbower, 26 Pa. 199; Buckley v. Garrett, 47 Pa. 213.

*Mr. John D. Blair*, for the appellee:

The policy is the law of the relation between the insurer and the insured, and the latter is not allowed to appropriate its benefits and at the same time disregard its conditions. The condition against encumbrances is not a formal one, such as those applying to the proof of loss, but goes to the very heart and essence of the contract: Seybert v. Insurance Co., 103 Pa. 285; Penn. M. F. Ins. Co. v. Schmidt, 119 Pa. 449; Hench v. Insurance Co., 122 Pa. 135. There is not a scintilla of evidence that the company ever recognized any liability or encouraged the plaintiff in any expense, after it knew of the encumbrances. A waiver is an equitable defence and must be established by the measure of proof required in equity. Crawford was a special agent, not vested with authority to waive this breach, and the plaintiff was bound to inquire into the scope of his authority: Wood on Insurance, 873. But the tenth clause of the policy precludes all the vague testimony of the plaintiff as to waiver: Universal Ins. Co. v. Weiss, 106 Pa. 26.

OPINION, MR. JUSTICE MITCHELL:

The subject of waiver by acts in pais, notwithstanding stipulations in a policy of insurance that nothing less than an express agreement indorsed on the policy shall be effectual for that purpose, has just been considered in Dwelling-House Ins. Co. v. Gould, ante, 570, (opinion filed herewith,) and we refer to the review of the cases there made, to show that the charge of the learned judge, that evidence of a parol waiver was not competent, cannot be sustained. Before reaching the conclusion, however, that the case was wrongly withdrawn from the jury, we must examine the facts set up as evidence of a waiver.

The policy contained rather unusually stringent conditions that if the property was encumbered by judgment or otherwise, or should become so encumbered, without the consent of the

company indorsed thereon, it should cease to be binding on the company, and that nothing less than a specific agreement, clearly expressed and indorsed on the policy, should be construed as a waiver of any of the conditions. It is undisputed that there were encumbrances at the date of the policy, and others subsequently, of which no notice was given or consent obtained. The liability of the company was therefore discharged if the company chose to so treat it, and had it remained passive there would have been no cause of action. But, in fact, the company did not remain passive. On receipt of the proofs of loss the secretary wrote asking for further information, which was furnished. An agent then called on plaintiff, with the proofs of loss in his possession, examined the remains of the fire, and, according to plaintiff, produced a list of the liens from the docket of the court, received explanations in regard to them, and then demanded an appraisement under the terms of the policy. This latter statement and some others are denied by the defendant, but for the present purpose we must assume that the jury would have found them to be true. After some delay, appraisers were appointed by the parties, respectively, and an adjustment of the loss was made, which the agent of the company then promised should be paid in ninety days. These negotiations lasted nearly five months, and plaintiff alleges that during that time he was prevented from rebuilding his barn, and suffered other inconveniences and damage in consequence. In addition to this, the adjustment of the loss by the appraisers was, under the twenty-second condition of the policy, binding and conclusive as to amount; and, though they might give him but a small part of what he deemed his loss, the plaintiff was nevertheless barred, by his submission, from any larger claim.

Do these facts, assuming the jury to find them, afford sufficient evidence of such a change in plaintiff's position, to his detriment, and in reliance on the acts of the company, as will justify the jury in finding a waiver, under the second branch of the rule laid down in Dwelling-House Ins. Co. v. Gould? In Coursin v. Ins. Co., 46 Pa. 323, the facts constituting the waiver are not reported, but the language of Justice THOMPSON, on page 331, is closely applicable to the present case: "If it [the company] acted and promised, after the action was

Opinion of the Court.

legally barred, as if it did not intend to insist on the limitation, and *put the party to trouble, expense*, and anxiety in regard to his claim, they need not complain of a jury finding that they did waive it." And in Niagara F. Ins. Co. v. Miller, 120 Pa. 504, 517, the present Chief Justice says: "If, with the knowledge in its possession of every fact upon which to avoid the policy, they misled the plaintiff for nearly a year, *subjected him to the expense of procuring plans and specifications of his building*, and never informed him that they would not pay because the policy was avoided, they have no ground to complain if they are now held to be estopped from setting up such a defence." In this last case, and also in Snowden v. Insurance Co., 122 Pa. 502, the facts relied upon to establish a waiver were certainly no stronger than they appear to be in the present; and, under those decisions, the latest and most analogous of a long line, we must hold that the evidence in the present case should have gone to the jury on the question of waiver.

The learned judge apparently fell into error by following Universal F. Ins. Co. v. Weiss, 106 Pa. 20, too literally. Some of the expressions in the opinion therein upon the question of waiver of proofs of loss would probably justify the taking of the present case from the jury. But the opinion must be read in its connection, as applied to the evidence. The principle of waiver by acts and declarations, is expressly stated by the learned judge, but he then proceeds to the facts, and says that of waiver as to proofs of loss there was no sufficient evidence, and of waiver as to time of bringing suit no evidence at all. Upon its facts, the decision is in line with the others already cited.

I have, of course, discussed the case entirely from the plaintiff's point of view of the facts. The truth of plaintiff's own testimony, of Crawford's contradiction of it, of the latter's knowledge of the encumbrances before his demand for appraisement, the extent of his authority, and how far his knowledge is that of the company, and other like questions, are for the jury on the weight of the evidence. The omission of notice of encumbrances is not, however, a mere formal defect, but a breach of a substantial condition of the insurance; and, in view of this fact, and of the express stipulation in the policy that nothing should amount to a waiver unless specifically agreed

Statement of Facts.

to and indorsed on the policy, it will be the duty of the plaintiff to establish the parol waiver by a clear preponderance of evidence. But where a case is taken from the jury, and decided as a matter of law upon the sufficiency of the evidence, we must (as in cases of nonsuit, Elkins v. Insurance Co., 113 Pa. 386,) treat the plaintiff's case as though the jury had found it to be true. Upon the actual facts or the weight of the evidence we indicate no opinion; indeed, we have none.

Judgment reversed, and venire de novo awarded.